# SEALED

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION
## JULY 26, 2007, SESSION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 6 2007

JOHN F. CORCORAN, CLERK
BY: _S. Taylor_
DEPUTY CLERK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) **SEALED** |
| | ) Criminal Number 7·07·cr·00048 |
| **v.** | ) |
| | ) **All in violation of:** |
| **TED JAMES JOHNSON, JR.** | ) Title 18, U.S.C. § 1341 |
| **FRANK GRAHAM FARRIER, JR.** | ) Title 18, U.S.C. § 1343 |
| | Title 18, U.S.C. § 1956(h) |
| | Title 18, U.S.C. § 1956(a)(1)(B)(i) |
| | Title 18, U.S.C. § 1957 |
| | Title 15, U.S.C. § 78j(b), 78ff |
| | Title 7, U.S.C. § 6m(1), 6n, 13(a)(5) |
| | Title 7, U.S.C. § 6o(1), 13(a)(5) |
| | Title 7, U.S.C. § 13(a)(1) |
| | Title 18, U.S.C. § 152(2) |

## INDICTMENT

### Introduction to the Indictment

At all times material to this Indictment:

1.    **TED JAMES JOHNSON, JR.,** resided at 302 Woodland Drive, Pearisburg, Virginia.  Since 1992, **JOHNSON** has been a business partner with **FRANK GRAHAM FARRIER, JR.**

2.    **FRANK GRAHAM FARRIER, JR.,** resided in Newport, Virginia.  Since 1992, **FARRIER** has been a business partner with **JOHNSON.**

3.     On March 26, 1992, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** entered into a partnership named **MOUNTAIN INVESTMENTS, LTD.,** whose stated purpose was "to engage in the trading of financial markets and other investments." **JOHNSON and FARRIER** were the sole principals of this partnership. **MOUNTAIN INVESTMENTS, LTD.,** most recently used the address 302 Woodland Drive, Pearisburg, Virginia 24134.

4.     On July 21, 1995, **JOHNSON** incorporated **DOGWOOD FARMS, INC.** **JOHNSON** and **FARRIER** were listed as directors of the corporation. The Articles of Incorporation state the purpose of **DOGWOOD FARMS, INC.,** was for transacting any lawful business including "buying, selling and developing real estate." **JOHNSON** and **FARRIER** each owned fifty percent of this company. **DOGWOOD FARMS, INC.,** operated out of 302 Woodland Drive, Pearisburg, Virginia and used P.O. Box 773, Pembroke, Virginia 24136 as its mailing address.

5.     **MOUNTAIN INVESTMENTS, LTD.,** and **DOGWOOD FARMS, INC.,** maintained checking accounts at National Bank of Blacksburg, and **JOHNSON** and **FARRIER** both signed checks on the accounts. **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** also maintained personal checking accounts at National Bank of Blacksburg. **JOHNSON**'s checking account was a joint account with his wife, P. J.

2

6.    **JOHNSON** and **FARRIER** offered financial investments to the public through **MOUNTAIN INVESTMENTS, LTD.,** and **DOGWOOD FARMS, INC.,** by accepting funds from individuals and organizations for trading in the financial markets in exchange for notes bearing high rates of interest. **JOHNSON** and **FARRIER** used the checking accounts described above to deposit, transfer, and withdraw investor funds.

7.    The financial investments offered by **JOHNSON** and **FARRIER** constitute "securities" as defined by federal law. Title 15, United States Code, Section 78c(10) states in pertinent part, "the term 'security' means any note, stock,...security future, bond,... certificate of interest or participation in any profit-sharing agreement,...investment contract,... or in general, any instrument commonly known as a 'security'."

8.    Persons who sell securities in Virginia are required to be registered by the Commonwealth of Virginia to make such sales and the securities themselves must also be registered, unless exempted by law.  According to the National Association of Securities Dealers, **JOHNSON** and **FARRIER** were never registered to sell securities in Virginia or any other state, nor were they exempt from registration.  Further, **JOHNSON** and **FARRIER** never registered any securities in Virginia to offer to the public.

9.    Some investors with **JOHNSON** and **FARRIER** understood that their funds were going to be traded in futures or commodity futures transactions.  These

3

investors were advised by **JOHNSON** and **FARRIER** that their funds would be traded using a trading system that **JOHNSON** and **FARRIER** had in place which would assure high rates of return.

10.    **JOHNSON** and **FARRIER** accepted these various investors' funds for futures trading transactions and commingled those funds in their various checking accounts.  The funds that were then used for trading by **JOHNSON** and **FARRIER** consisted of  commingled and "pooled" funds from these checking accounts.

11.    The United States Commodity Futures Trading Commission ("CFTC") is an independent federal agency of the United States charged with administering and enforcing the provisions of the Commodity Exchange Act ("CEA"), 7 U.S.C. §1 *et seq.*, and the CFTC Regulations, 17 C.F.R. § 1.1 *et seq.*  As part of its duties, the CFTC regulates transactions involving the trading of commodity futures contracts.

12.    Pursuant to Title 7, United States Code, Section 1a(5), a commodity pool operator ("CPO") is any person engaged in a business in the nature of an investment trust or similar form of enterprise and who solicits, accepts, or receives funds from others for the purpose of trading in commodity futures contracts. Typically, the funds received from investors by a CPO are combined in commodity pools and used to trade in commodity futures contracts.  During the time period described in this Indictment, any person acting as a CPO was required to be registered with the CFTC or comply with the CPO exemption requirements under the CEA and the CFTC Regulations.

4

13.    **TED JAMES JOHNSON, JR., FRANK G. FARRIER, MOUNTAIN INVESTMENTS, LTD.,** and **DOGWOOD FARMS, INC.,** have never been registered with the CFTC as CPOs and have never been exempt from being registered as CPOs in accordance with the CEA and the CFTC Regulations.

14.    Title 7, United States Code, Section 6o(1), prohibits CPOs from using the mails or any other means of interstate commerce to (A) employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or (B) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

## COUNT ONE
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    From on or about 1992 and continuing to at least on or about September, 2004, the defendants, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** devised and intended to devise a scheme and artifice to defraud and to obtain money, by means of false pretenses, representations and

promises, from diverse individuals and organizations by promising those individuals and organizations that, if they invested with **JOHNSON** and **FARRIER** and their companies, they would earn high rates of returns, when, in fact, such funds were not traded as represented and promised.

3.    It was part of the scheme and artifice that the defendants, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** did the following:

a.    **JOHNSON** and **FARRIER** solicited over 80 persons  to invest with them by falsely representing to potential investors that they had the ability to generate large profits from their financial trading activities.   **JOHNSON** and **FARRIER** represented to their investors, that they were experienced and successful investment traders knowing that such statements were not true.

b.    Upon receipt of money from investors, **JOHNSON** and **FARRIER** executed notes, which stated that the money given to **JOHNSON** and **FARRIER** would earn specific high rates of interest.  **JOHNSON** and **FARRIER** told investors this high rate of return would result from their financial trading which would earn from 17 to 25 percent or more per year.

c.    **JOHNSON** and **FARRIER** deposited the investors' funds into bank accounts they controlled at National Bank of Blacksburg, including **DOGWOOD FARMS, INC.,** and **MOUNTAIN INVESTMENTS, LTD.,** accounts.

d.      **JOHNSON** and **FARRIER** established commodity futures trading accounts in the name of **MOUNTAIN INVESTMENTS, LTD.**  **JOHNSON** and **FARRIER** had exclusive authority over all trading and fund management for these accounts.  The funds used for trades in the **MOUNTAIN INVESTMENTS, LTD.,** commodity futures trading accounts came from the investors' funds commingled in the various **JOHNSON** and **FARRIER** individual and business checking accounts.

e.      **JOHNSON** and **FARRIER** told investors that they had a trading system and could make money trading in financial markets regardless of market conditions.  **JOHNSON** and **FARRIER** falsely represented to investors that their funds were being used to trade actively and profitably, including trading in the commodity futures market when, in truth and fact, and as **JOHNSON** and **FARRIER** then well knew, such funds were not being used to trade in commodity futures or invested at all, or such funds were being used to trade at a loss.  **JOHNSON** and **FARRIER** falsely represented to investors, that the trading accounts were generating large profits, when in fact they sustained losses rather than generating profits.

f.      Contrary to their representations, **JOHNSON** and **FARRIER** used only a small portion of the investors' funds to trade as promised.  Instead, **JOHNSON** and **FARRIER** engaged in a "Ponzi" scheme, whereby **JOHNSON** and **FARRIER** paid funds to some investors with funds obtained from other investors' funds, and falsely represented those payments as financial trading profits.

7

g.    During the operation of the "Ponzi" scheme, **JOHNSON** and **FARRIER** prepared and provided to several investors Internal Revenue Service Form 1099s purporting to show the amount of interest that had allegedly accumulated on their investments with **JOHNSON** and **FARRIER**. From 1992 to 2000, **JOHNSON** and **FARRIER** provided at least 283 Form 1099s to investors reflecting interest income of over $3.7 million, when **JOHNSON** and **FARRIER** well knew no such interest income had been earned.

h.    On January 18, 2001, the Virginia State Corporation Commission, Division of Securities and Retail Franchising ("SCC"), initiated an investigation into the securities activities of **JOHNSON** and **FARRIER**, and **MOUNTAIN INVESTMENTS, LTD.,** based on a complaint. The basis of this complaint was an advertisement which ran in a local newspaper in the year 2000 soliciting investors for **MOUNTAIN INVESTMENTS, LTD.** This advertisement stated, "Please feel free to call if you would like to start receiving a solid return on your money." The promised rate of return ranged from 14 to 17 percent per year.

i.    On January 22, 2001, the SCC sent a letter by certified mail to **MOUNTAIN INVESTMENTS, LTD., JOHNSON** and **FARRIER** requesting information regarding the offer and sale of investment opportunities in the form of **MOUNTAIN INVESTMENTS, LTD.,** notes. The SCC requested copies of all financial documents reflecting investor related transactions. In this letter, the SCC

advised **JOHNSON** and **FARRIER** that they may be selling securities without being registered, in violation of Virginia law.

j.    On February 22, 2001, **JOHNSON, FARRIER** and **MOUNTAIN INVESTMENTS, LTD.,** through its attorney, responded to the SCC's request by letter, advising: "The partnership ceased accepting funds upon receipt of your letter of January 22, and has declined a number of requests since this time."

k.    On April 11, 2001, the SCC received a December 31, 2000, financial statement from **MOUNTAIN INVESTMENTS, LTD.** In addition, **JOHNSON, FARRIER** and **MOUNTAIN INVESTMENTS, LTD.,** advised the SCC: "As you were advised upon our first contact, Mountain Investments and all of its affiliates ceased accepting new money upon receipt of the initial notification from your office, and no further funds are being accepted."

l.    On or before April 26, 2001, **MOUNTAIN INVESTMENTS, LTD.,** sent the SCC copies of its checking account statements through March, 2001, showing no new investor deposits after January 22, 2001. However, beginning April 2, 2001, and continuing thereafter, unknown to the SCC, **JOHNSON** and **FARRIER,** continued to solicit investor money through **DOGWOOD FARMS, INC.** Those investor funds were initially deposited into **DOGWOOD FARMS, INC.,** or **JOHNSON** or **FARRIER**'s checking accounts and then transferred into the **MOUNTAIN INVESTMENTS, LTD.,** account to conceal and disguise the source of the funds being deposited into the **MOUNTAIN INVESTMENTS, LTD.,** account.

m.    As new investor funds were accepted, **JOHNSON** and **FARRIER** offered Deeds of Trust on **DOGWOOD FARMS, INC.,** property. Between April and June, 2001, **JOHNSON** and **FARRIER** accepted $355,000 in new investor funds through **DOGWOOD FARMS, INC.,** with a corresponding Deed of Trust. At **JOHNSON** and **FARRIER's** instruction, checks, in the total amount of $275,000, from ten (10) investors named on that Deed of Trust were made payable to a law firm and deposited into the law firm's trust account.   A law firm employee, D. J., wrote a check from the law firm's trust account payable to **DOGWOOD FARMS, INC., TED JOHNSON, JR.,** and P. J.    **DOGWOOD FARMS, INC.,** wrote three checks for $70,000 each to **JOHNSON,** P. J. and **FARRIER** which were deposited into their personal accounts.   **JOHNSON** and **FARRIER** then wrote checks to **MOUNTAIN INVESTMENTS, LTD.**  Those **DOGWOOD FARMS, INC.,** investor funds were then used to make payments  to **MOUNTAIN INVESTMENTS, LTD.,** investors, as outlined in Chart A below.

10

## CHART A



n.     Of the investor funds described in paragraph 3.m., above, **JOHNSON** and **FARRIER** sent $110,000 by wire transfer to a **MOUNTAIN INVESTMENTS, LTD.,** trading account with Man Financial in June, 2001.  A small portion of that money was actively traded, resulting in a net trading loss of approximately $6,691.52. The remaining funds, approximately $103,000, were wire transferred back to the **MOUNTAIN INVESTMENTS, LTD.,** checking account by August 10, 2001.

o.     On June 22, 2001, **JOHNSON, FARRIER** and **MOUNTAIN INVESTMENTS, LTD.,** provided copies of financial documents to the SCC at its request.   These documents included partnership tax returns, additional bank statements, **MOUNTAIN INVESTMENTS, LTD.,** trading records, a summary of partnership cash flows, and a listing of notes that had not yet been paid.

p.     On August 20, 2001, based upon the information known to the SCC, **JOHNSON, FARRIER** and **MOUNTAIN INVESTMENTS, LTD.,** entered into a Settlement Order with the SCC requiring all **MOUNTAIN INVESTMENTS, LTD.,** investor  monies be repaid in full within one year.  The Order permanently enjoined **JOHNSON** and **FARRIER** from any future violations of the Virginia Securities Act.

q.     Unknown to the SCC, throughout the one year compliance period of this Order and following, **JOHNSON** and **FARRIER** continued to solicit investor money from investors through **DOGWOOD FARMS, INC.,** and their personal accounts.

12

r.     On or about August 2, 2002, **FARRIER** solicited S.G. to invest money with **JOHNSON**.  **FARRIER** presented this offer as a special opportunity for S.G. saying that **JOHNSON** had a special deal.  **FARRIER** told S.G. that **JOHNSON** was paying $600 per week in interest on a $40,000 investment.  On August 2, 2002, S.G., through his business, made a $40,000 investment and received a 28-day personal note from **FARRIER**.  S.G. understood that the money was to be invested.  S.G. wrote the $40,000 check payable to **FRANK FARRIER**, which **FARRIER** deposited into his personal checking account at National Bank of Blacksburg.  On August 2, 2002, **FARRIER** wrote a check on his personal account for $20,000 payable to **MOUNTAIN INVESTMENTS, LTD.**  None of S. G.'s money was invested in the financial market.  On that same date, along with other transactions, **MOUNTAIN INVESTMENTS, LTD.,** made a $20,000 payment to investor H. V.

s.     According to the date thereon, on December 1, 2002, **JOHNSON** and **FARRIER** signed forty (40) Deed of Trust Notes on **DOGWOOD FARMS, INC.**, property in a total amount exceeding $4.4 million.  These Deed of Trust Notes were intended to replace the notes issued by **MOUNTAIN INVESTMENTS, LTD.**  The Deed of Trust Notes conveying the security interests were not filed with the Clerk of Court for Giles County by **JOHNSON** or **FARRIER**.

t.    On December 12, 2002, when **JOHNSON** and **FARRIER** had not yet provided proof of compliance with the Settlement Order, the SCC received a letter from **MOUNTAIN INVESTMENTS, LTD.,** advising that all investments had been repaid. **JOHNSON** and **FARRIER** advised the SCC that they would provide proof of the repayment within 14 days.

u.    By December 17, 2002, and thereafter, **JOHNSON** and **FARRIER** urged **MOUNTAIN INVESTMENTS, LTD.,** investors to exchange their **MOUNTAIN INVESTMENTS, LTD.,** notes for the above described Deed of Trust Notes on the **DOGWOOD FARMS, INC.,** property. The investors were also requested to sign a statement to be sent to the SCC advising that their **MOUNTAIN INVESTMENTS, LTD.,** notes had been satisfied. Not all **MOUNTAIN INVESTMENTS, LTD.,** investors were willing to make the exchange and sign the statement of satisfaction.

v.    On June 10, 2004, because **JOHNSON** and **FARRIER** had failed to comply with the Settlement Order, the SCC issued a Rule to Show Cause against **JOHNSON** and **FARRIER** and **MOUNTAIN INVESTMENTS, LTD.,** for non-compliance and contempt of the Settlement Order.

w.    On September 3, 2004, bankruptcy petitions were filed for **JOHNSON** and **FARRIER.** On September 7, 2004, bankruptcy petitions were also filed for **DOGWOOD FARMS, INC.,** and **JOHNSON's** wife, P. J. Schedules filed in these bankruptcy cases showed debts to investors in excess of $8 million.

14

x.    From at least 1999 through 2004, **JOHNSON** and **FARRIER** had no employment apart from **MOUNTAIN INVESTMENTS, LTD.,** and **DOGWOOD FARMS, INC.** **JOHNSON** and **FARRIER** used investor funds to pay for their personal living expenses and **JOHNSON** used investor funds to pay living expenses for his wife and children and to pay mortgage payments on his home.

## The Mailing

4.    On or about August 2, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail, a check, dated August 2, 2002, in the amount of $9,000, that was mailed from **FARRIER** and **DOGWOOD FARMS, INC,** in Virginia to D. C. in Pearisburg, Virginia, and the defendants aided and abetted each other in this violation of law.

5.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWO
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.    On or about August 3, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail, a check, dated August 3, 2002, in the amount of $625, that was mailed from **JOHNSON** in Virginia to D. S. in Eggleston, Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT THREE
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.      On or about August 3, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by commercial interstate carrier, that is, Federal Express, a check, dated August 3, 2002, in the amount of $10,000, which was sent from **MOUNTAIN INVESTMENTS, LTD.,** in Virginia, to V. N. in Stansbury, Utah, and the defendants aided and abetted each other in this violation of law.

4.      All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOUR
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.      On or about September 5, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly take and receive from the mail a letter, dated September 3, 2002, sent by Certified Mail, which was sent from B. L. in Christiansburg, Virginia to **MOUNTAIN INVESTMENTS, LTD.,** in Pearisburg, Virginia, and the defendants aided and abetted each other in this violation of law.

4.      All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FIVE
### (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.     Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.     Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.     On or about September 6, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by Express Mail a check, dated September 7, 2002, in the amount of $6,000, which was sent from **JOHNSON** in Pearisburg, Virginia, to V. N. in Stansbury, Utah, and the defendants aided and abetted each other in this violation of law.

4.     All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SIX
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.     Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.     Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.     On or about September 18, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly take and receive from a commercial interstate carrier, that is, Federal Express, a check, dated September 18, 2002, in the amount of $100,000, which was sent from P. N. in Georgia, to **TED JAMES JOHNSON, JR.,** in Virginia, and the defendants aided and abetted each other in this violation of law.

4.     All in violation of Title 18, United States Code, Sections 1341 and 2.

20

## COUNT SEVEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.    On or about November 30, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a letter and attached spreadsheets, dated November 30, 2002, which was sent from **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Virginia, to the Virginia State Corporation Commission, Division of Securities and Retail Franchising, in Richmond, Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

21

## COUNT EIGHT
### (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.      On or about December 10, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a letter and attached spreadsheet, dated December 10, 2002, which was sent from **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Virginia, to the Virginia State Corporation Commission, Division of Securities and Retail Franchising in Richmond, Virginia, and the defendants aided and abetted each other in this violation of law.

4.      All in violation of Title 18, United States Code, Sections 1341 and 2.

22

## COUNT NINE
### (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.      On or about December 17, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a letter and Deed of Trust Note that was mailed from **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Pearisburg, Virginia to M. J. in Lynchburg, Virginia, and the defendants aided and abetted each other in this violation of law.

4.      All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.      On or about December 17, 2002, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a letter and Deed of Trust Note that was mailed from **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Pearisburg, Virginia to L. M. A. in Pembroke, Virginia, and the defendants aided and abetted each other in this violation of law.

4.      All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT ELEVEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.    On or about January 19, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by a commercial interstate carrier, and did take and receive from a commercial interstate carrier, that is, Federal Express, a check, dated January 19, 2003, in the amount of $30,000, which was sent from P. N. in Georgia to **TED JAMES JOHNSON, JR.,** in Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWELVE
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.    On or about January 22, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a letter and attached spreadsheet, dated January 22, 2003, which was sent from **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Virginia, to the Virginia State Corporation Commission, Division of Securities and Retail Franchising, in Richmond, Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

26

## COUNT THIRTEEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.    On or about January 24, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail, and did take and receive from the mail, a letter (satisfaction of note) that was mailed from S. P. J. in Radford, Virginia, to **MOUNTAIN INVESTMENTS, LTD.,** in Pearisburg, Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOURTEEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.      On or about March 27, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly take and receive from the mail a letter dated March 25, 2003, that was mailed from B. L. in Christiansburg, Virginia, to **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Pearisburg, Virginia, and the defendants aided and abetted each other in this violation of law.

4.      All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FIFTEEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.    On or about April 9, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a Summary of Repayment Efforts, dated April 9, 2003, which was sent from **TED JAMES JOHNSON, JR.,** in Pearisburg, Virginia, to the Virginia State Corporation Commission, Division of Securities and Retail Franchising, in Richmond, Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SIXTEEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.    On or about May 19, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a check in the amount of $5,000 and a handwritten memo signed by **FARRIER**, dated May 19, 2003, which was sent from **MOUNTAIN INVESTMENTS, LTD.,** 302 Woodland Drive, Pearisburg, Virginia, to T. B. and K. B. in Huntersville, North Carolina, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SEVENTEEN
### (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

### The Mailing

3.    On or about May 30, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a letter dated May 30, 2003, which was sent from **TED JAMES JOHNSON, JR.,** and **MOUNTAIN INVESTMENTS, LTD.,** in Virginia, to the Virginia State Corporation Commission, Division of Securities and Retail Franchising, in Richmond, Virginia, and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT EIGHTEEN
### (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.     Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.     Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.     On or about July 3, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by mail a Deed of Trust which was sent from **TED JAMES JOHNSON, JR.,** 302 Woodland Drive, Pearisburg, Virginia, to S. D. and J. D. in Pembroke, Virginia, and the defendants aided and abetted each other in this violation of law.

4.     All in violation of Title 18, United States Code, Sections 1341 and 2.

32

## COUNT NINETEEN
## (Mail Fraud - 18 USC 1341)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Mailing

3.    On or about April 11, 2004, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, did knowingly take and receive from the mail a memo from E. S. G. which was sent by E. S. G. by mail to **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** and the defendants aided and abetted each other in this violation of law.

4.    All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWENTY
## (Wire Fraud - 18 USC 1343)

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Wire Communication

3.    On or about January 17, 2003, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises, did cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals, and sounds, that is, the receipt of an interstate wire transfer of $20,000 from an investor account at Bank of America in Georgia to **TED JAMES JOHNSON, JR.,'s** account at National Bank of Blacksburg in Virginia.

4.    All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-ONE
## (Wire Fraud - 18 USC 1343)

The Grand Jury charges:

1.     Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Scheme and Artifice to Defraud

2.     Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

## The Wire Communication

3.     On or about February 4, 2004, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** for the purpose of executing, and attempting to execute, the scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises, did cause to be transmitted by means of a wire communication in interstate commerce, certain signs, signals, and sounds, that is, the receipt of an interstate wire transfer of $8,000 from an investor account at Wells Fargo in Texas to **TED JAMES JOHNSON, JR.,'s** account at National Bank of Blacksburg in Virginia.

4.     All in violation of Title 18, United States Code, Sections 1343 and 2.

35

## COUNT TWENTY-TWO
### (Money Laundering Conspiracy - 18 USC 1956(h))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    From on or about at least 1999, and continuing to on or about February 6, 2004, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR., and FRANK GRAHAM FARRIER, JR.,** the defendants, willfully and knowingly combined, conspired, confederated and agreed together, and with each other, to commit the following offenses against the United States, to wit:

a.    knowingly conducting and attempting to conduct a financial transaction with the proceeds of a specified unlawful activity with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. Section 1956(a)(1)(A)(i);

b.    knowingly conducting and attempting to conduct a financial transaction with the proceeds of a specified unlawful activity knowing that the transaction was designed in whole or in part to conceal and disguise the nature, ownership and control of the proceeds of the specified unlawful activity, in violation of 18 U.S.C. Section 1956(a)(1)(B)(i);

c.    knowingly engaging and attempting to engage in monetary transactions by, through, and to a financial institution, affecting interstate commerce, with criminally derived property of a value greater than $10,000, in violation of 18 U.S.C. Section 1957.

3.    In furtherance of the conspiracy and to effect the objects thereof, the defendants performed, among others, the following overt acts:

a.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

b.    **JOHNSON** and **FARRIER** obtained over $3.7 million from investors and deposited those funds into accounts in the name of **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR., MOUNTAIN INVESTMENTS, LTD.,** and **DOGWOOD FARMS, INC.,** at the National Bank of Blacksburg in Pembroke, Virginia, a financial institution insured by the FDIC.

c.    **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** attempted to conceal and disguise the nature, ownership and control of the proceeds of the fraud scheme after the Virginia State Corporation Commission, Division of Securities and Retail Franchising ("SCC"), initiated its investigation. They did so by depositing money obtained from new investors into their personal accounts and into the **DOGWOOD FARMS, INC.,** checking account.  **JOHNSON** and **FARRIER** then wrote checks from those accounts to **MOUNTAIN INVESTMENTS,**

**LTD.,** and to **DOGWOOD FARMS, INC.,** and often noted on the checks that these were personal loans or investments that they were making to these companies. After depositing the funds into the **MOUNTAIN INVESTMENTS, LTD.,** and **DOGWOOD FARMS, INC.,** accounts, **JOHNSON** and **FARRIER** wrote checks to previous investors representing the funds as either trading profits or returns on investments.

      4.     All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWENTY-THREE
### (Money Laundering - 1956(a)(1)(B)(i))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    On or about August 2, 2002, in the Western District of Virginia and elsewhere, the defendants, **TED JAMES JOHNSON, JR.**, and **FRANK GRAHAM FARRIER, JR.,** as principals and as aiders and abettors, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the payment by **DOGWOOD FARMS, INC.,** of $9,000 to D. C. as a partial repayment of an investment, which involved the proceeds of a specified unlawful activity, that is, a scheme to defraud using the mail as described in Count One of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise, the source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction the defendants knew that the property involved in the financial transaction, that is, funds in the amount of $9,000, represented the proceeds of some form of unlawful activity.

3.    All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT TWENTY-FOUR
## (Money Laundering - 1956(a)(1)(B)(i))

The Grand Jury charges:

1. Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2. On or about August 3, 2002, in the Western District of Virginia and elsewhere, the defendants, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** as principals and as aiders and abettors, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the payment by **MOUNTAIN INVESTMENTS, LTD.,** of $10,000 to V. N. as a partial repayment of an investment, which involved the proceeds of a specified unlawful activity, that is, a scheme to defraud using the mail as described in Count One of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise, the source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction the defendants knew that the property involved in the financial transaction, that is, funds in the amount of $10,000, represented the proceeds of some form of unlawful activity.

3. All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT TWENTY-FIVE
## (Money Laundering - 1956(a)(1)(B)(i))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    On or about September 13, 2002, in the Western District of Virginia and elsewhere, the defendants, **TED JAMES JOHNSON, JR.**, and **FRANK GRAHAM FARRIER, JR.,** as principals and as aiders and abettors, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the payment by **MOUNTAIN INVESTMENTS, LTD.,** of $10,000 to J. S. as a partial repayment of an investment, which involved the proceeds of a specified unlawful activity, that is, a scheme to defraud using the mail as described in Count One of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise, the source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction the defendants knew that the property involved in the financial transaction, that is, funds in the amount of $10,000, represented the proceeds of some form of unlawful activity.

3.    All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT TWENTY-SIX
## (Money Laundering 1956(a)(1)(B)(i))

The Grand Jury charges:

1.     Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.     On or about September 13, 2002, in the Western District of Virginia and elsewhere, the defendants, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** as principals and as aiders and abettors, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the payment by **MOUNTAIN INVESTMENTS, LTD.,** of $10,000 to H. S. as a partial repayment of an investment, which involved the proceeds of a specified unlawful activity, that is, a scheme to defraud using the mail as described in Count One of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise, the source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction the defendants knew that the property involved in the financial transaction, that is, funds in the amount of $10,000, represented the proceeds of some form of unlawful activity.

3.     All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

42

## COUNTS TWENTY-SEVEN to THIRTY- FOUR
## (Money Laundering - 18 USC 1957)

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.      On or about the dates set forth below, in the Western District of Virginia, and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** as principals and as aiders and abettors, did knowingly engage in monetary transactions through financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the payments to the individuals described below, with fraudulently obtained money, such property having been derived from a specified unlawful activity, that is, mail fraud as alleged in Counts One through Nineteen, above, in violation of Title 18, United States Code, Section 1341:

| COUNT NO. | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 27 | August 2, 2002 | Check # 4732 from **MOUNTAIN INVESTMENTS, LTD.,** in the amount of $30,000 to H. V. |
| 28 | August 2, 2002 | Check # 4733 from **MOUNTAIN INVESTMENTS, LTD.,** in the amount of $20,000 to H. V. |
| 29 | August 16, 2002 | Check # 543 from **DOGWOOD FARMS, INC.,** in the amount of $50,000 to D. C. |

43

| COUNT NO. | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 30 | August 23, 2002 | Check # 545 from<br>**DOGWOOD FARMS, INC.,**<br>in the amount of $30,000 to E. G. |
| 31 | September 19, 2002 | Check # 546 from<br>**DOGWOOD FARMS, INC.,**<br>in the amount of $50,000 to D. C. |
| 32 | September 23, 2002 | Check # 3575 from<br>**TED JAMES JOHNSON, JR.,**<br>in the amount of $20,000 to K. F. H. |
| 33 | January 17, 2003 | Check # 561 from<br>**DOGWOOD FARMS, INC.,**<br>in the amount of $18,005 to National Bank<br>of Blacksburg to buy a cashier's check<br>payable to D. C. |
| 34 | January 17, 2003 | Check # 3719 from<br>**TED JAMES JOHNSON, JR.,**<br>in the amount of $23,000 to G. C. |

3.    All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT THIRTY-FIVE
### (Securities Fraud - 15 USC 78j(b), 78ff )

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.      Beginning on or about a date unknown to the Grand Jury and continuing to on or about February, 2004, in the Western Judicial District of Virginia, and elsewhere, the defendants, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** as principals and as aiders and abettors, did unlawfully, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, promulgated by the United States Securities and Exchange Commission, by

        a.      employing devices, schemes, and artifices to defraud;

        b.      making and causing to be made untrue statements of material fact and omitting to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.    engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit in connection with the purchase and sale of securities.

4.    In violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

## COUNT THIRTY-SIX
### (Unregistered Commodity Pool Operator - 7 USC 6m(1), 6n, 13(a)(5))

The Grand Jury charges:

1.      Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.      Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.      From a date unknown to the Grand Jury through on or about February, 2004, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** functioned as Commodity Pool Operators ("CPOs").

4.      From approximately 1999 through on or about February , 2004, in the Western District of Virginia and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** knowingly, willfully, and unlawfully used, or caused to be used, the mails and other means of interstate commerce to conduct business as CPOs, as more fully described in Count One of this Indictment.  During this period, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** were not registered as CPOs with the Commodity Futures Trading Commission and were not exempt by relevant statute or regulation from being so registered.

5.      All in violation of Title 7, United States Code, Sections 6m(1), 6n and 13(a)(5) and Title 18, United States Code, Section 2.

## COUNT THIRTY-SEVEN
## (Embezzlement of Commodity Pool Funds - 7 USC 13(a)(1))

The Grand Jury charges:

1.     Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.     Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.     From approximately 1999 through on or about February, 2004, in the Western District of Virginia and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** were required to be registered with the Commodities Futures Trading Commission as Commodity Pool Operators ("CPOs").

4.     Acting with intent to defraud **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** knowingly embezzled and converted to their own use, and to the use of another, money and other property valued over $100 which they had received from victim investors for the purpose of investing in **JOHNSON** and **FARRIER's** commodity trading pool.

5.     All in violation of Title 7, United States Code, Section 13 (a)(1) and Title 18, United States Code, Section 2.

## COUNT THIRTY-EIGHT
### (Fraud by Commodity Pool Operators – 7 USC 6o(1))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.    From approximately 1999 through on or about February, 2004, in the Western District of Virginia and elsewhere, **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** while acting as Commodity Pool Operators ("CPOs") and being required to be registered with the Commodity Futures Trading Commission as CPOs, knowingly employed a device, scheme or artifice to defraud pool participants and engaged in a transaction, practice and  course of business which operated as a fraud or deceit upon pool participants or prospective pool participants by (1) falsely representing to their investors that they were experienced and successful traders; (2) making fraudulent representations that investor  funds would be invested in commodity futures trading when such funds were not, in fact, invested in commodity futures trading and instead were being misappropriated; and (3) making false statements to investors regarding the profitable status of their investments.

4.    All in violation of Title 7, United States Code, Sections 6o(1) and 13(a)(5), and Title 18, United States Code, Section 2.

## COUNT THIRTY-NINE
## (False Oath in Bankruptcy - 18 USC 152(2))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.    On or about October 13, 2004, in the Western District of Virginia, **TED JAMES JOHNSON, JR.,** did knowingly and fraudulently make a false oath and account in and in relation to a bankruptcy case under Title 11 of the United States Code, specifically during a Title 11, United States Code, Section 341, Meeting of Creditors, while under oath and testifying in that proceeding, **TED JAMES JOHNSON, JR.,** in responding to questions from the Trustee, testified that the funds accepted from the investors listed as creditors in the bankruptcy schedules represented loans rather than investments, which testimony **TED JAMES JOHNSON, JR.,** then and there well knew was false.

4.    All in violation of Title 18, United States Code, Section 152(2).

## COUNT FORTY
### (False Oath in Bankruptcy - 18 USC 152(2))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.    On or about December 10, 2004, in the Western District of Virginia, **TED JAMES JOHNSON, JR.,** did knowingly and fraudulently make a false oath and account in and in relation to a bankruptcy case under Title 11 of the United States Code, specifically during a Title 11, United States Code, Section 341, Meeting of Creditors, while under oath and testifying in that proceeding and in responding to questions from creditor-investor D. C., **TED JAMES JOHNSON, JR.,** testified that he had disclosed to D. C. that **TED JAMES JOHNSON, JR.,** was under investigation by the Virginia State Corporation Commission, Division of Securities and Retail Franchising (SCC), and operating under a Settlement Order at the time of D. C.'s initial investment on November 7, 2001, and also at the time D. C. renewed his note on February 7, 2002, which testimony **TED JAMES JOHNSON, JR.,** then and there well knew was false.

4.    All in violation of Title 18, United States Code, Section 152(2).

## COUNT FORTY-ONE
## (False Oath in Bankruptcy - 18 USC 152(2))

The Grand Jury charges:

1.    Paragraphs 1 through 14 of the Introduction to the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2.    Paragraphs 2 and 3 of Count One are incorporated by reference into this Count of the Indictment as if fully set forth herein.

3.    On or about December 27, 2004, in the Western District of Virginia, **FRANK GRAHAM FARRIER, JR.,** did knowingly and fraudulently make a false oath and account in and in relation to a bankruptcy case under Title 11 of the United States Code, specifically during a Title 11, United States Code, Section 341, Meeting of Creditors, while under oath and testifying in that proceeding, **FRANK GRAHAM FARRIER, JR.,** in responding to questions from creditor-investor S. G., testified that when he accepted investment funds from that investor in August, 2002, the business was secure financially and doing well and that the investor's  money was not used to provide payments to another investor, which testimony **FRANK GRAHAM FARRIER, JR.,** then and there well knew was false.

4.    All in violation of Title 18, United States Code, Section 152(2).

## COUNT FORTY-TWO
### (FORFEITURE)

1.    Upon conviction of one or more of the offenses alleged in Counts One through Thirty-Five and Counts Thirty-Nine through Forty-One of this Indictment **TED JAMES JOHNSON, JR.,** and **FRANK GRAHAM FARRIER, JR.,** shall forfeit to the United States:

a.    pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of a violation of Title 18, United States Code, Sections 152(2), 1341, and 1343, and Title 15, United States Code, Section 78ff, as alleged in Counts One through Twenty-One, Thirty-Five, and Thirty-Nine through Forty-One of the Indictment; and

b.    pursuant to Title 18, United States Code, Section 982(a)(1), any property involved in, or any property traceable thereto, a violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(h), and 1957, as alleged in Counts Twenty-Two through Thirty-Four of the Indictment.

2.    The property to be forfeited includes, but is not limited to, the following:

a.    a MONEY JUDGMENT in an amount not less than $3,799,125.69 in United States currency, representing the amount of proceeds obtained as a result of one or more of the offenses alleged herein; and

b.    certain real property and appurtenances located at 302 Woodland Drive, Pearisburg, Virginia 24134, which is Lot No. 6 of the Woodland Subdivision,

and being the same property conveyed to **TED JAMES JOHNSON, JR.,** and P. J., from First Century Bank, N.A., by Deed dated March 13, 1998, which Deed was recorded on March 13, 1998, in the Circuit Court Clerk's Office of Giles County, Virginia in Deed Book 0292, Page 013.

      3.     If any of the above-described property, as a result of any act or omission of the defendants,

         a.     cannot be located upon the exercise of due diligence;

         b.     has been transferred or sold to, or deposited with, a third party;

         c.     has been placed beyond the jurisdiction of the court; or

         d.     has been substantially commingled with other property which cannot be divided without difficulty;

it is the intent of the United States pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A **TRUE BILL**, this 26th day of July, 2007.

_Teresa B Johnson_
**FOREMAN**

_John L. Brownlee (QCO)_
**JOHN L. BROWNLEE**
**UNITED STATES ATTORNEY**