# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 7:07CR00048** |
| | : | |
| **TED JAMES JOHNSON, JR.** | : | **United States' Trial Memorandum** |

United States of America, by and through its counsel of record,  Jennie L. M. Waering, Assistant United States Attorney, and David A. Bybee, Trial Attorney, U.S. Department of Justice,  submits the following Memorandum in anticipation of trial in this case beginning September 29, 2008.

Respectfully submitted,

Julia C. Dudley
Acting United States Attorney

s/Jennie L. M. Waering
Jennie L. M. Waering
Assistant United States Attorney
Virginia Bar Number 20570

s/David A. Bybee
David A. Bybee
Trial Attorney
Fraud Section
United States Department of Justice

# TABLE OF CONTENTS

I. Status of the Case.................................................................................................1

    A. Indictment...................................................................................................1

    B.  Defendants Custody Status.......................................................................2

    C.  Defendant Frank Farrier Has Pled Guilty................................................2

    D.  Length of Trial..........................................................................................2

    E.  Pre-Trial Motions......................................................................................2

II.  Law of the Case...............................................................................................2

    A.  Mail Fraud................................................................................................2

    B.  Wire Fraud................................................................................................4

    C.  Money Laundering Conspiracy.................................................................6

    D.  Money Laundering (§1956).......................................................................7

    E.   Money Laundering (§1957)......................................................................10

    F.   Securities Fraud........................................................................................11

    G.  Unregistered Commodity Pool Operator..................................................14

    H.  Embezzlement of Commodity Pool Funds................................................15

    I.  Fraud by Commodity Pool Operator..........................................................16

    J.  False Oath in Bankruptcy........................................................................ 17

    K.  Forfeiture..................................................................................................17

III. Witnesses.........................................................................................................18

IV. Exhibits.............................................................................................................19

V.  Evidentiary Issues............................................................................................19

    A. Search Warrant.........................................................................................19

    B.  Computer Records....................................................................................21

    C.  Business Records.......................................................................................21

    D.  Audio Recordings.....................................................................................22

    E.  Summaries.................................................................................................23

# I.  STATUS OF THE CASE

## A.  INDICTMENT

On July 26, 2007, a federal Grand Jury returned a 42 count indictment against

defendants, Ted James Johnson, Jr., and Frank Farrier, Jr., charging the following:

| COUNT | CHARGE | PENALTY |
|-------|--------|---------|
| 1 - 19 | Mail Fraud / 18 USC 1341 | 20 years / $250,000 fine |
| 20, 21 | Wire Fraud / 18 USC 1343 | 20 years / $250,000 fine |
| 22 | Money Laundering Conspiracy 18 USC 1956(h) | 20 years / $500,000 fine or twice the value of the property involved in the transaction, whichever is greater |
| 23 - 26 | Money Laundering 1956(a)(1)(B)(i) | 20 years / $500,000 fine or twice the value of the property involved in the transaction, whichever is greater |
| 27 - 34 | Money Laundering 18 USC 1957 | 10 years / $250,000 fine or twice the amount of the criminally derived property involved in the transaction, whichever is greater |
| 35 | Securities Fraud 15 USC 78j(b), 78ff | 10 years / $1,000,000 fine |
| 36 | Unregistered Commodity Pool Operator 7 USC 6m(1), 6n, 13(a)(5) | 5 years / $500,000 fine |
| 37 | Embezzlement of Commodity Pool Funds 7 USC 13(a)(1) | 5 years / $500,000 fine |
| 38 | Fraud by Commodity Pool Operators 7 USC 6o(1), 13(a) | 5 years / $500,000 fine |
| 39 - 41 | False Oath in Bankruptcy 18 USC 152(2) | 5 years / $250,000 fine |
| 42 | Forfeiture | |

### B.  DEFENDANT'S CUSTODY STATUS

The defendant is not in custody.

### C.  DEFENDANT FRANK FARRIER HAS PLED GUILTY

Co-Defendant Frank Farrier, Jr., pleaded guilty on September 12, 2008, pursuant to a written plea agreement.  As a part of that plea agreement, Mr. Farrier is cooperating with the government and may receive a downward departure from the sentencing guidelines if he provides substantial assistance to the government in the prosecution of Ted Johnson, Jr.  It is anticipated that Mr. Farrier will testify for the United States at trial.

### D.  LENGTH OF TRIAL

The estimated length of the government's case is between two to three weeks depending on the duration of cross-examination and whether some facts or exhibits may be stipulated.

### E.  PRE TRIAL MOTIONS

As of the filing of this memorandum, there are no pending motions to be decided.

## II.  LAW OF THE CASE

### A.  MAIL FRAUD 18 U.S.C. § 1341

Counts 1 through 19 of the Indictment charge the defendant with mail fraud in violation of 18 U.S.C. § 1341.  Section 1341 reads in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or fraudulent

pretenses, representations, or promises, .....and  for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under.....

The essential elements of mail fraud are:

FIRST:         that the defendant devised a scheme to defraud or to obtain money by false or fraudulent  pretenses, representations or promises;

SECOND:    that the defendant used, or caused to be used, the United States mails, or a commercial interstate carrier, in furtherance of  that scheme;

THIRD:        that a statement or an omission in furtherance of the scheme was material; and

FOURTH:     that the defendant did such acts knowingly.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use.  It does not matter whether the item  mailed was itself false or deceptive so long as the mail, or a commercial interstate carrier, was used as a part of the scheme.  Nor does it matter whether the scheme or plan was successful or that any money or property was obtained.

The government must prove that Johnson acted with a specific intent to defraud to prove a violation of the mail and wire fraud statutes.  United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001).  Such intent may be inferred from the totality of the circumstances,

including the defendant's statements and conduct.  Id. at 666.[1]

### B.  WIRE FRAUD 18 U.S.C. § 1343

Counts 20 and 21 of the Indictment charge the defendants with wire fraud in

violation of 18 U.S.C. § 1343.   Section 1343 reads in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The essential elements of wire fraud are:

FIRST:      that the defendant devised a scheme to defraud or for obtaining money by means of false or fraudulent pretenses, representations, or promises

SECOND:     that the defendant made, or caused to be made, an interstate wire communication in  furtherance of that scheme; and

THIRD:      that a statement or an omission in furtherance of the scheme was material; and

FOURTH:     that the defendant did such acts knowingly.

The requirement of specific intent under this statute is satisfied by "the existence of a

scheme which is 'reasonably calculated to deceive persons of ordinary prudence and

---

[1]The "good faith" defense is not applicable in this case.  See United States v. Bakker, 925 F.2d 728, 738 (4th Cir. 1991) ("a defendant does not qualify for the good-faith defense if he honestly believed a venture would succeed yet at the same time furthered the venture by acting with a specific intent to deceive others")(citing United States v. Painter, 314 F.2d 939, 942-43 (4th Cir. 1963).  Further, ignorance of the illegality of one's actions will not support a good faith defense to mail or wire fraud.  See, e.g., United States v. Stockheimer, 157 F.3d 1082, 1088 (7th Cir. 1998)(mail and bank fraud); United States v. Paradies, 98 F.3d 1266, 1285 (11th Cir. 1996) (mail fraud).

comprehension,' and this intention is shown by examining the scheme itself." <u>Schreiber Distributing Co. v. Serv-Well Furniture Company, Inc.</u>, 806 F.2d 1393,1400 (9th Cir. 1986), (quoting <u>United States v. Green</u>, 745 F.2d 1205, 1207 (9th Cir. 1985)), <u>cert. denied</u>, 474 U.S. 925 (1985).  Such a scheme may encompass false representations as to future intentions as well as to existing facts.  <u>See</u> <u>McNally v. United States</u>, 483 U.S. 350, 359-60;  <u>Durland v. United States</u>, 161 U.S. 306, 313 (1896).  The falsehood must be shown to be material.  <u>United States v. Halbert</u>, 640 F.2d 1000, 1007 (9th Cir. 1981).

The false and fraudulent representations and promises underlying such a scheme are defined broadly, and may include affirmative representations, half-truths, the concealment of material facts, and the deceptive use of words and printed materials.  <u>Lustiger v. United States</u>, 386 F.2d 132, 138 (9th Cir. 1967), <u>cert. denied</u>, 390 U.S. 951 (1968).  The government does not have to allege or prove that the scheme was successful, <u>i.e.</u>, that the victims suffered a monetary loss, provided the defendant <u>contemplated</u> some actual harm or injury to a victim.  <u>Carpenter v. United States</u>, 489 U.S. 19, 26 (1987).  Also, the government need not prove each allegation of fraud listed in the Indictment.  Proof of one or more of the fraudulent representations is sufficient.  <u>United States v. Beecroft</u>, 608 F.2d 753, 757 (9th Cir. 1979).

The defendant need not personally have made use of the wires.  The offense may be established where one acts with knowledge that prohibited actions will follow in the ordinary course of business or where prohibited acts can reasonably be foreseen.  <u>United</u>

States v. Lothian, 976 F.2d 1257 (9th Cir. 1992).

### C.  MONEY LAUNDERING CONSPIRACY 18 U.S.C. § 1956 (h)

Count 22 of the Indictment charges the defendant with money laundering conspiracy in violation of 18 U.S.C. 1956(h).  Subsection (h) states:

> (h) Any person who conspires to commit any offense defined in this section or section 1957  shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

The elements are:

FIRST          a conspiracy to commit money laundering was in existence;

SECOND          that during the conspiracy, the defendant knew that the proceeds  used  had been derived from an illegal activity; and

THIRD          the defendant knowingly joined in the conspiracy.

See United States v. Diamond, 378 F.3d 720, 727 (7th Cir.2004) ("To convict a defendant of conspiracy to commit money laundering, the government must show the defendant was involved with two or more people to launder money and that the defendant knew the proceeds used to further the scheme were derived from an illegal activity.").

A conspiracy under 18 U.S.C. § 1956(h), as opposed to a conspiracy under 18 U.S.C. § 371, does not explicitly require proof of an overt act. United States v. Godwin, 272 F.3d 659, 669 (4th Cir.2001)

### D.  MONEY LAUNDERING  18 U.S.C. §1956 (A)(1)(B)(i)

Counts 23-26 of the Indictment charge the defendant with five counts of section

1956(a)(1)(B)(i) money laundering, specifically conducting financial transactions to conceal and disguise the nature, ownership and control of the proceeds of the specified unlawful activity. Section 1956(a)(1)(B)(i) reads in pertinent part:

> **(a)(1)** Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–
>
> **(B)** knowing that the transaction is designed in whole or in part--
>
>> **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

The elements are:

    1.    <u>Financial Transaction</u>

A "financial transaction" is defined by 18 U.S.C. § 1956(c)(4) and includes a transaction "involving one or more monetary instruments." "Monetary instruments" include "personal checks, bank checks, and money orders." 18 U.S.C. § 1956(c)(5). Writing and negotiating checks have been held to be financial transactions. <u>See</u> <u>United States v. Rounsavall</u>, 115 F.3d 561 (8th Cir. 1997); <u>United States v. Napoli</u>, 54 F.3d 63 (2d Cir. 1995).

    2.    <u>Interstate Commerce</u>

A financial transaction charged under section 1956 or section 1957 must "in any way or degree" affect interstate or foreign commerce.  The burden is slight, and the use of a bank implicates interstate commerce.  See United States v. Jackson, 935 F.2d 832 (7th Cir. 1991); United States v. Owens, 159 F.2d 221, 226 (6th Cir. 1998) (use of bank implicates instrumentality of interstate commerce so not necessary to determine whether defendant's conduct had effect on interstate commerce).  A credit union is a financial institution as defined by 18 U.S.C. § 1956 (c)(6).

    3.    Knowledge

For violations of section 1956(a)(1)(B)(i), the government must prove that the defendant knew that the property involved in the transactions represented the proceeds of specified unlawful activity.  The government must show that the defendant knew that the specified unlawful activity (i.e., mail fraud or wire fraud) was illegal, but this requirement can be met in fraud cases by circumstantial evidence of fraudulent intent.  See United States v. Sayakhom, 186 F.2d 928 (9th Cir. 1999); United States v. Baker, 63 F.3d 1478 (9th Cir. 1995).

    4.    Proceeds

In a recent Supreme Court case, the Court held that the term "proceeds" in the money laundering statute meant "profits" not gross receipts. United States v. Santos, 128 S.Ct. 2020 (June 2, 2008).  However, the United States believes that the Santos holding is inapplicable to

this case.

First, the money laundering charges in this case are not "promotion" money laundering as in <u>Santos</u> but "concealment" cases. The Court in <u>Santos</u> only considered the term "proceeds" as it related to the charged "promotion" element. Under the substantive money laundering charges in this case, there is no promotion element. The alleged SUA proceeds were moved through differing bank accounts to conceal the source of the supposed "earnings" from the investment fraud scheme not promote the scheme.

Second, in <u>Santos</u>, the plurality and dissenting opinions left the Court evenly divided between the view that "proceeds" means profits in all cases and the view that it means gross receipts in all cases.   Justice Stevens' opinion concurring in the judgment provided the tie-breaking vote.  However, disagreeing with both the plurality and the dissent, Justice Stevens took the view that "proceeds" may mean profits as applied to <u>some SUAs</u> and <u>gross receipts as applied to others</u>.  128 S.Ct. at 2031-2032 (Stevens, J., concurring).  Thus, until there is a clarification by the Supreme Court, <u>Santos</u> is limited to its facts involving the receipts of illegal gambling businesses in promotion money laundering.

However, if the government is required to prove that the proceeds of the specified unlawful activity is "profits,"[2] the United States can show that the financial transactions

_____

    [2] <u>United States v. Santos</u>, 2008 WL 2229212 (June 2, 2008).  "Thus, to establish the proceeds element under the "profits" interpretation, the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money

involved profits from the scheme.

     5.   <u>Intent to conceal</u>

To prove a case under section 1956(a)(1)(B)(i) or (ii), "the government must prove that the transaction was designed to conceal one or another of the enumerated attributes of the proceeds involved." <u>United States v. Jackson</u>, 935 F.2d 832, 838-39 (7th Cir.1991) (citing <u>United States v. Sanders</u>, 928 F.2d 940, 946 (10th Cir.1991)). Therefore, the Government must prove a specific intent to structure a transaction so as to conceal the true nature of the proceeds. <u>Id</u>.

**E.  FINANCIAL TRANSACTION INVOLVING CRIMINALLY DERIVED PROPERTY   18 U.S.C. § 1957**

Counts 27-34 of the Indictment charge the defendant with eight counts of conducting financial transactions of over $10,000 in criminally derived property in violation of 18 U.S.C. §1957.  Section 1957 reads in pertinent part:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).
> **(b)(1)** Except as provided in paragraph (2), the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both.

---

involved in a charged transactions. However, the proceeds need not be traced back to particular offenses, or particular transactions.  <u>Id</u>. at p. 9.

There are two elements of a section 1957 money laundering offense:

FIRST          a monetary transaction of over $10,000 which was in fact derived from
               specified unlawful activity and

SECOND         knowing that the property was criminally derived property.

Section 1957 contains no specific intent requirement, i.e., intent to conceal or promote. Accordingly, section 1957 proscribes simply spending the property with knowledge of its illegal source, even if done openly. See <u>United States v. Allen</u>, 129 F.3d 1159 (10th Cir. 1997).

Like section 1956 offenses, section 1957 requires that the defendant know that the property involved was derived from illegal activity. See <u>United States v. Sokolow</u>, 81 F.3d 397 (3rd Cir. 1996). "Monetary transaction" includes all "financial transactions" under section 1956. See 18 U.S.C. § 1956(c)(4)(B).

### F.  SECURITIES FRAUD 15 U.S.C. 78j(b), 78ff

Count 35 of the Indictment alleges securities fraud in violation of 15 U.S.C. 78j(b), 78ff. Section 78j(b) reads in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors

11

Title 17, Code of Federal Regulations, Section 240.10b-5 states in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 240.10b-5 prohibits "material misrepresentations or omissions to induce action or inaction by purchasers or sellers of securities, or affects others with a vested interest in a securities transaction."  United States v. Rebrook, 58 F.3d 961, 965-66 (4th Cir. 1995.

Count 35 of the Indictment charges securities fraud based on the use of manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities–in this case–promissory notes.  The purpose of the securities laws is to prohibit "the use of deception, in the form of material misrepresentations or omissions, to induce action or inaction by purchasers or sellers of securities, or that affects others with a vested interest in a securities transaction."  United States v. Bryan, 58 F.3d 933, 943 (4th Cir. 1995), abrogated on other grounds, United States v. O'Hagan, 521 U.S. 642 (1997).

12

In order to prove securities fraud under 15 U.S.C. §§ 78j(b) and 78ff, the United States must show:

FIRST          that the defendant employed a device, scheme, or artifice to defraud, or made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made not misleading, or engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit on a person,

SECOND     that any false or misleading statement or omission made by the defendant was material,

THIRD        that the defendant acted with intent to defraud or with reckless disregard for the truth,[3]

FOURTH     that the defendant's conduct was in connection with the purchase or sale of a security, and

FIFTH          that the defendant used or caused to be used means and instrumentalities of interstate commerce.

See 4 L. SAND, et al., MODERN FEDERAL JURY INSTRUCTIONS, Inst. 82-3 (2000).  It is not necessary that the untrue statement itself passed through the mail or over the telephone so long as the mail or telephone was used as a part of the purchase or sale transaction.  It is also not necessary that anyone actually suffered a loss or that the defendant made a profit.

### G.  UNREGISTERED COMMODITIES POOL OPERATOR 7 U.S. C. 6m(1), 6n, 13(a)(5)

---

[3]A defendant's claim that he acted in good faith, without more, does not preclude a finding that he acted recklessly.  SEC v. Infinity Group Co., 212 F.3d 180, 192 (3d Cir. 2000) (noting that even if defendants believed their investment system was sound, they could be liable for securities fraud if they acted with reckless disregard for the truth).

Count 36 of the Indictment charges Johnson with a violation of Title 7, United States Code, Sections 6m(1), 6n, and 13(a)(5) which require registration of a person operating a commodities pool.  Section 6m(1) reads in pertinent part:

> (1) It shall be unlawful for any commodity trading advisor or commodity pool operator, unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor or commodity pool operator....

Section 6n then sets forth the guidelines for such required registration, while section 13(a)(5) specifies that the violation of these rules will constitute a felony.  7 U.S.C. §§ 6n, 13(a)(5).

Section 13(a)(5) reads in pertinent part:

> (a) Felonies generally
>
> It shall be a felony punishable by a fine of not more than $1,000,000 (or $500,000 in the case of a person who is an individual) or imprisonment for not more than five years, or both, together with the costs of prosecution, for:
>
> (5) Any person willfully to violate any other provision of this chapter, or any rule or regulation thereunder, the violation of which is made unlawful or the observance of which is required under the terms of this chapter, but no person shall be subject to imprisonment under this paragraph for the violation of any rule or regulation if such person proves that he had no knowledge of such rule or regulation.

As defined by the National Futures Association, a commodity pool operator ("CPO") is "an individual or organization which operates or solicits funds for a commodity pool; that is, an enterprise in which funds contributed by a number of persons are combined for the purpose of trading futures contracts or commodity options, or to invest in another commodity pool."  See www.nfa.futures.org/registration/cpo.asp.  To establish a violation of

14

this provision, the United States must show:

FIRST          that the defendant acted as a commodity pool operator

SECOND         that the defendant did not have the  required valid registration

THIRD          that the defendant used the mails or interstate commerce in connection with
               the operation  of his commodity pool, and

FOURTH         that the defendant did such acts willfully.

## H.  EMBEZZLEMENT OF COMMODITY POOL FUNDS 7 U.S.C. 13(a)(1)

Title 13, United States Code, Section 13(a)(1) makes it a felony for any person who is

registered, or required to be registered, under the commodities laws to "embezzle, steal,

purloin, or with criminal intent convert to such person's use or to the use of another" money

or other property worth more than $100 that was given to the person who is registered or

required to be registered for trading in the commodity markets or in other relation to the

registrant's business.  13 U.S.C. § 13(a)(1).

Specifically, Title 13, United States Code, Section 13(a)(1), states in pertinent part:

(a) Felonies generally
It shall be a felony punishable by a fine of not more than $1,000,000 (or $500,000 in
the case of a person who is an individual) or imprisonment for not more than five
years, or both, together with the costs of prosecution, for:

> (1) Any person registered or required to be registered under this
> chapter, or any employee or agent thereof, to embezzle, steal, purloin,
> or with criminal intent convert to such person's use or to the use of
> another, any money, securities, or property having a value in excess of
> $100, which was received by such person or any employee or agent
> thereof to margin, guarantee, or secure the trades or contracts of any
> customer or accruing to such customer as a result of such trades or

15

contracts or which otherwise was received from any customer, client, or pool participant in connection with the business of such person. The word "value" as used in this paragraph means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

Thus, to prove a violation of this statute as alleged in Count 37 of the Indictment, the

government must establish

FIRST:        that the defendant was a person required to be registered under the commodities laws

SECOND:     that the defendant embezzled, stole, purloined or converted money or other property worth more than $100

THIRD:        that those funds were given to him by a customer or pool participant in relation to his business.

## I. FRAUD BY COMMODITY POOL OPERATOR 7 U.S.C. 6OL

(1)   It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly–

(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

The elements are:

FIRST:        That the defendant acted as a commodity pool operator

SECOND:     That the defendant used or caused to be used the mails or other means of interstate commerce, and

THIRD:        That the defendant employed any device, scheme, artifice (or engaged in any transaction, practice or course of business) to defraud any person

16

<u>or</u>

that the defendant engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon any person.

J.  FALSE OATH IN BANKRUPTCY 18 U.S.C. 152 (2)

A person who–

(2) knowingly and fraudulently makes a false oath or account in or in relation to any case under Title 11;

shall be fined under this title, imprisoned not more than 5 years, or both.

The elements are

FIRST:      that the defendant made a false oath or account in or in relation to a case under Title 11, that is, a bankruptcy case

SECOND:   that the defendant did such acts knowingly.

**K.  FORFEITURE**

Count 42 of the Indictment seeks forfeiture of property including up to $3,799,125.69, and certain real property and appurtenances located at 302 Woodland Drive, Pearisburg, Virginia 24134, which is Lot No. 6 of the Woodland Subdivision, as described in the Indictment.  As the Fourth Circuit has found, forfeiture under 21 U.S.C. § 853 is a punishment.  <u>United States v. Tanner</u>, 61 F.3d 231, 234 (4th Cir. 1995).  Under the provisions of Federal Rule of Criminal Procedure 32.2(b)(4), upon the request of a party after the return

17

of a guilty verdict on the substantive counts, a jury may determine whether the government

has established the requisite nexus between the property and the offense committed by the

defendant.  Fed. R. Crim. P. 32.2(b)(4).

## III.  WITNESSES

The government intends to call approximately 40 witnesses.  At least 20 of the

witnesses will be victims of the defendants' fraud scheme.  These witnesses are necessary

either to prove elements of the scheme itself or to prove the execution of the scheme

through the mails or wires.  The government will also call various law enforcement agents to

testify of their investigations.  The government will call various experts from government

agencies and independent associations involved with the trading of commodities and

securities to assist the jury in understanding the scheme alleged in the pending Indictment.

The testimony of these witnesses was summarized and produced to the defendants in accord

with Rule 16 and FRE 702, 703, and 704.   These witnesses will include Thomas Bloom and

Christopher Cummings of the Commodity Futures Trading Commission, Danny Taylor of

the Virginia State Securities Commission, and Richard H. Lee of the United States Postal

Inspection Service.  The government may call other foundational witnesses as necessary.

## IV.  EXHIBITS

The government has scanned its exhibits and with the Court's permission will use a

trial presentation software to project them through the courtroom monitors.  The original

18

paper exhibits will be in the courtroom and available to the court and counsel.  The government will also have a set of the paper exhibits in binders for the Court.  The original paper exhibits will be available to the jury at the close of the case.

Projecting the exhibits from a laptop is essentially the same process as using the "ELMO" except that it will allow direct examinations to move quickly by not having to pull and replace paper exhibits.  The software simply projects the exhibit on screen.  The government has already informed defendants' counsel that it will make its program available to the defendants.  The  software is very simple and easy to use and the government will make its paralegal available to the defense to display any government exhibit desired by the defendant.

## V.  EVIDENTIARY ISSUES

### A.  SEARCH WARRANT

The government will seek to introduce numerous documents found during the search of defendant Ted Johnson's residence at 302 Woodland Drive, Pearisburg, Va., executed on October 6, 2005.  Because the Indictment alleges that the defendants misrepresented their financial condition and profitability, the government will seek to introduce correspondence, applications, tax returns, government forms, and other documents from the search which show the defendant's true income and financial condition as well as false representations of that income.  Other documents seized during the search are so voluminous that summaries

have been prepared.  The admissibility of these summaries is treated below.

One important exhibit in this case is a two-volume personal journal kept by defendant Ted Johnson.   The journals, written in the first person,  make numerous references to Ted Johnson's family members such as his wife, children, parents and church membership as well as Mr. Johnson's commodity trading business.   These references, taken in conjunction with the first person voice and location of its seizure, leave no doubt that the journals were written by Ted Johnson.   Further, Mr. Farrier can testify to Mr. Johnson's handwriting.

Federal Rule of Evidence 901(a) states that the authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  FRE Rule 901(b)(4) provides by way of example that this burden may be met by evidence of "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."  It is just such contents and distinctive characteristics that provide the foundation for this exhibit.  However, because of the numerous references to his children and church, the government has extracted from the journal only those references related to his business activities and placed them in a separate typed exhibit which the government will seek to introduce as a summary under FRE 1006.

B.  COMPUTER RECORDS

1.  <u>Authentication</u>

20

Also seized during the search were computer hard drives and other electronic media containing relevant correspondence and financial records.  Before a party may move for admission of a computer record or any other evidence, the proponent must show that it is authentic.  That is, the government must offer evidence "sufficient to support a finding that the [computer record or other evidence] in question is what its proponent claims."  Fed. R. Evid.  901(a).  See United States v. Simpson, 152 F.3d 1241, 1250 (10th Cir. 1998).

The standard for authenticating computer records is the same for authenticating other records.  The degree of  authentication does not vary simply because a record happens to be (or has been at one point) in electronic form.  See  United States v. Vela, 673 F.2d 86, 90 (5th Cir. 1982); United States v. DeGeorgia, 420 F.2d 889, 893 n.11 (9th Cir. 1969).

C.  BUSINESS RECORDS

The United States intends to ask the Court to admit numerous business records from banks, futures commission merchants,[4] and other financial institutions through certifications of authenticity under Federal Rules of Evidence 803(6) and 902(11).  With the addition of Federal Rule of Evidence 902(11) in 2000, these records are now admissible through the use of certifications as provided in FRE 803(6) and 902(11).  Each exhibit offered

---

[4]As defined by the National Futures Association, a futures commission merchant ("FCM") is an individual or organization which both solicits or accepts buy and sell orders for futures contracts or option on futures and accepts money for such orders. See http://www.nfa.futures.org/registration/fcm.asp.

21

as a business record under FRE 803(6) has such a certification.  The government has

produced these certifications in discovery and notices the defendant of its intent to seek the

admission of these business records through such certifications.

Admission of these records based on certifications signed by document custodians

will avoid the need for testimony from numerous custodians of records, substantially

reducing the length of the trial.  The government intends to call witnesses who have

reviewed and analyzed these records to assist the jury in understanding their significance.

D.  AUDIO RECORDINGS

The government intends to introduce at least two  audio recordings made during the

bankruptcy hearings in which the defendants testified under oath.  These recordings are

relevant to counts 39-40.  The proponent of an audio recording must show that the recording

was sufficiently authentic to be admitted into evidence. United States v. Branch, 970 F.2d

1368, 1371 (4th Cir.1992). An audio recording can be authenticated if the proponent satisfies

Federal Rule of Evidence 901(b)(5), which provides that the "identification of a voice, whether

heard firsthand or through mechanical ... recording" is admissible "by opinion based upon

hearing the voice at any time under circumstances connecting it with the alleged speaker."

The district court has wide latitude in determining whether or not the proponent of a

recording has adequately laid the foundation from which the jury could reasonably evaluate

the accuracy, the validity, and the credibility of the contents of the recordings.  United States

22

v. Capers, 61 F.3d 1100, 1106 (4th Cir. 1995).  The government has copied the original tape-recordings onto CDs for ease of playback.

E.  SUMMARIES

Summaries of evidence are used in court under two different rules of evidence depending on the nature of the summary itself.  The Courts of Appeal have distinguished between charts and summaries *as evidence* and charts or summaries *as pedagogical devices*. United States v. Wood, 943 F.2d 1048, 1053, (9th Cir. 1991).  Since both types of summaries or charts will be used at trial, the following sets out the law and rules of evidence underlying this type of evidence.

//

//

//


1.  Admissibility of Summary Charts under FRE 1006

Federal Rule of Evidence 1006 [5] states:

> The contents of voluminous writings, recordings, or photographs  which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made

---

[5] For a good summary of Fed. R. Evid. 1006, see United States v. Bray, 139 F.2d 1104 (6th Cir. 1998)

23

available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

The United States intends to introduce summaries of bank records in the form of spreadsheets and charts illustrating financial transactions.  The underlying records are the bank account monthly statements, records of wire transfers, inter-account transfers, checks, deposit records, and cash withdrawals (collectively referred to as the "bank records").

In accord with Fed. R. Evid. 1006, the foundational requirement are, first, that the bank records are voluminous (in this case over 1000 pages) and cannot be conveniently examined in court.   Rule 1006 does not require that it be literally impossible to examine all the underlying records, but only that in-court examination would be inconvenient. United States v. Briscoe, 896 F.2d 1476, 1495  (7th Cir. 1990).

Second, that the underlying information contained in the summaries have been disclosed in discovery and made available to the defendant for examination or copying, or both, at a reasonable time and place.

Third, that the bank records are themselves admissible evidence under Fed. R. Evid. 803(6), and 902(1), (11), (12). United States, v. Baker, 10 F.3d 1374 (9th Cir. 1993); United States v. Johnson, 594 F.2d 1253 (9th Cir. 1979). The summaries do not embellish or slant the evidence in any way.  They merely summarize or reflect the facts and figures contained in the underlying evidence.

Once these predicate facts are established, the 1006 summary or chart is admissible itself as evidence upon the court finding that the summary accurately reflects the underlying documents. For each summary sought to be admitted, the person supervising or reviewing the creation of the chart or summary will testify to its accuracy and source documents.[6]  The underlying records have already been disclosed in discovery and will be available in court for inspection by the court and counsel.

2.  <u>Admissibility of Summary Charts under FRE 611</u>

Other charts or summaries which do not meet the foundational requirements of FRE 1006 may also be used at trial by the witness as a aid to the witness in explaining his or her testimony under FRE 611.  FRE 611 provides, in relevant part: "The [district] court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time..."

Unlike 1006 summaries which are themselves evidence in the case. Rule 611 summaries can be used as testimonial aids.  "A summary chart 'prepared by a witness from personal knowledge to assist the jury in understanding or remembering a mass of details...is

_____

[6] See <u>United States v. Lemire</u>, 720 F.2d 1327 D.C. Cir. 1983)(finding no error where agent who reviewed charts ensured that they reflected evidence, was able to identify the source of all the information, and explain how all the dollar figures were derived); <u>United States v. Behrens</u>, 689 F.2d 154 (10th Cir. 1984)(finding a proper foundation for summary can be laid through the testimony of the witness who supervised preparation of the exhibit).

admissible, not under Rule 1006, but under such general principles of good sense as are embodied in Rule 611(a)'" United States v. Johnson, 54 F.3d 1150, 1158 (4th Cir. 1995), (quoting 5 Weinstein's Evidence 1006[03] (1992)).   The following cases are illustrative of the admissibility findings on this type of evidence.

In United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), the court admitted a chart under Rule 611 at the defendant's tax trial which summarized the assets, liabilities and expenditures of the defendant.   The chart was a summary of facts and calculations.   The court held:

> The use of the chart in court contributed to the clarity of the presentation to the jury, avoided needless consumption of time, and was a reasonable method of presenting the evidence.  It was well within the discretion of the court to permit this use pursuant to Fed. R. Evid. 611(a).  Having thus utilized the chart without objection with a full opportunity for the defendant to challenge the facts, figure, calculations and underlying documents upon which the chart was based, it was not reversible error to admit the chart in evidence.

Gardner, at 776.

In accord is United States v. Johnson, 54 F.3d 1150 (4th Cir. 1995), where the government offered in evidence an organization chart that was based, in part, on the testimony of the witnesses who preceded him.  This chart diagramed drug transactions among members of the conspiracy.  Finding that the chart did not meet the foundation requirements of FRE 1006, the court analyzed the chart with reference to FRE 611.  It held that the chart could be admitted if it served to aid the jury in ascertaining the truth and

26

where the court minimized the potential prejudice to the defendant by eliminating leading

or suggestive captions. [7]   The court also gave a limiting instruction to the jurors. [8]

Respectfully submitted,

Julia C. Dudley
Acting United States Attorney

s/Jennie L. M. Waering
Jennie L. M. Waering
Assistant United States Attorney
Virginia Bar Number 20570

s/David A. Bybee
David A. Bybee
Trial Attorney
United States Department of Justice

---

[7]  But see United States v. Soulard, 730 F.2d 1292 (9th Cir. 1984)(holding the court should allow the chart to be used as a testimonial aid for witnesses and as a visual aid for counsel in argument, but should not admit the charts as evidence or allow their use by the jury during deliberations)

[8] The court instructed the jurors as follows: "[T]he chart, is the Government's analysis of the evidence.  It is the case as the Government sees it from the evidence which has been adduced here in the courtroom, and, of course, it is subject to such interpretation as you as a juror feel is appropriate to be given to it.  In other words, it is presented to show what the Government contends has been proven in the case.  That is the contention.  It's up to you then as a jury to resolve any issues that may be in your mind concerning [the chart].

27

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 23rd day of September, 2008 I served the foregoing Trial Brief upon Randy Cargill, Counsel for defendant Frank Farrier, and upon Anthony Anderson, counsel for co-defendant Ted Johnson, by electronic filing using the court's Electronic Court Filing (ECF) system.

s/Jennie L. M. Waering_____
Assistant United States Attorney


s/David A. Bybee_____
Trial Attorney