UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TED JAMES JOHNSON ) | |
| ) | |
| Petitioner ) | |
| v. ) | Case No: 7:07-CR-00048-SGW-1 |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Respondent ) | |

**UNITED STATES' MOTION TO DISMISS PETITIONER'S MOTION FOR RELIEF PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255**

The United States of America, by counsel, files this reply and motion to dismiss in response to Petitioner's motion for relief pursuant to 28 U.S.C. § 2255. The United States asserts that Petitioner is not entitled to the relief requested and requests that the motion be dismissed.

**STATEMENT OF THE CASE**

Following a jury trial in the United States District Court for the Western District of Virginia (Wilson, J.), Petitioner, Ted James Johnson ("Johnson"), was convicted on 18 counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 2-19); two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 20-21); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 22); four counts of money laundering, in violation of 18 U.S.C. § 1956(a) (1) (B) (i) (Counts 23-26); 8 counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 (Counts 27-34), securities fraud, in violation of

1

U.S.C. § 78j (Count 35); use of the mails by an unregistered commodity pool operator, in violation of 7 U.S.C. § 6m(1), 13(a) (5) (Count 36); embezzlement by a commodity pool operator, in violation of 7 U.S.C. § 13(a) (Count 37); and fraud by a commodity pool operator, in violation of 7 U.S.C. § 6o(1) and 13(a).  He was sentenced to a total of 200 months of imprisonment followed by three years of supervised release.

Johnson filed an appeal to the United States Court of Appeals for the Fourth Circuit.  Oral arguments were had on September 24, 2010.  Johnson's conviction was affirmed by the appellate court on December 23, 2010.  *See United States v. Johnson*, 405 Fed.Appx. 746 (4th Cir. 2010).  The Supreme Court denied certiorari on May 31, 2011.  *Johnson v. United States*, 131 S.Ct. 2943 (2011).  Johnson filed the instant motion to vacate his convictions on May 31, 2012.

## STATEMENT OF FACTS

Ted James Johnson and Frank Farrier formed Mountain Investments, Inc., (MI), to trade in the commodity futures markets.  MI's office was located in Johnson's residence.  Johnson partially owned real estate known as Dogwood Farms.  Johnson and Farrier formed Dogwood Farms, Incorporated, to handle the financial affairs of Dogwood Farms.  Johnson and Farrier established personal bank accounts and bank accounts for MI and Dogwood Farms at the National Bank of Blacksburg.  J.A. 244-265, 337-338, 445, 1323-1325.

Johnson and Farrier generally solicited funds from potential investors in person.  Johnson and Farrier pooled investor funds and commingled them in MI's checking account.  Johnson traded a small fraction of the pooled funds from the MI checking

2

account. Johnson's fund-pooling required him to register as a "commodities pool operator" under the Commodity Exchange Act, 7 U.S.C. § 1 *et. seq.,* but he did not do so. J.A. 151-152, 248-255, 283, 390-396.

During the 1990s, Johnson and Farrier collected more than $5 million from investors, many of them friends of Johnson, in exchange for promissory notes that guaranteed monthly "interest" payments based on an annual interest rate of 20% to 28%. Johnson and Farrier operated a "Ponzi" scheme whereby they diverted investor funds for their personal use and paid early investors with money obtained from later investors. Beginning in January 2001, the Virginia State Corporation Commission (SCC) investigated Johnson for selling unregistered securities. In April 2001, Johnson falsely advised the SCC that MI had stopped accepting new funds from investors.

Later that year, Johnson and Farrier accepted $335,000 from investors in exchange for a deed of trust on Dogwood Farms. From these funds, Johnson directed Farrier to write $70,000 in checks to Johnson, his wife, and to Farrier which were deposited into their personal accounts. Those funds were then re-deposited into MI's account to pay investors and for Johnson and Farrier's personal benefit. J.A. 340-356, 1295 (Count 22).

In August 2001, the SCC and MI entered into a settlement agreement. MI agreed to break no further laws, to repay its investors within a year, and to issue no further securities or promissory notes. MI also agreed to provide periodic status reports about its investor repayment plan to the SCC. J.A. 1298-1299; GX 26-7.

Johnson and Farrier then planned to obtain new funds in violation of the settlement and to keep their "Ponzi" scheme operating by using Dogwood Farms. J.A.

3

339. Johnson obtained new funds by issuing short-term personal notes at high rates of interest and depositing the funds in other bank accounts before redepositing them in MI's account. J.A. 1059, 1119-1120. Meanwhile, in the spring of 2002, Johnson stopped trading in the markets. J.A. 431-433. By the summer of 2002, Johnson had stopped sending monthly payments to most investors. J.A. 137, 653. That year, Johnson took $821,895 in funds that were deposited in the Johnson, Farrier, MI, or Dogwood Farms bank accounts to pay other investors or for personal use. J.A. 558. In 2004, Johnson's scheme collapsed.

On October 6, 2005, a search warrant was executed on Johnson's residence. Among other things, the search warrant authorized the seizure of "any other documents or records which are evidence of the receipt, disbursement, or use of funds from investors or note holders." *Petitioner's Exhibit A*, at 3. Pursuant to the search warrant, a large number of documents were seized from the home office that Johnson had been using to run the Ponzi Scheme. Among the items seized were multiple black spiral notebooks. The notebooks were seized from Johnson's home and office and contained daily journal entries by Johnson.

On July 26, 2007, a grand jury in the Western District of Virginia returned a 42 count indictment against Johnson and Farrier. Johnson's case then proceeded to trial where, among other evidence, entries from Johnson's journals that related to the financial scheme were admitted into evidence. Attorneys for the government took precautions to only admit journal entries that were directly relevant to the charges. The vast majority of the journal entries were never introduced at trial.

## ISSUES PRESENTED BY JOHNSON

A.  Whether Johnson's claim that his counsel was ineffective for failing to raise First, Fourth, and Fifth Amendment challenges to the seizure and use of Johnson's religious journals is without merit.

B.  Whether Johnson's claim that his counsel was ineffective for failing to challenge the indictment on the grounds that evidence from his journals may have been presented to the grand jury is without merit.

C.  Whether Johnson's claim that the prosecutors committed prosecutorial misconduct in violation of his rights to a fair trial and due process, as well as his rights under the First, Fourth, and Fifth Amendments to the Constitution, is without merit.

D.  Whether the District Court and Fourth Circuit Court of Appeals correctly allowed consideration of Johnson's journal entries to establish that he acted as a commodity pool operator within the statute of limitations.

E.  Whether Johnson's claim that the sentence imposed violated his rights under the Eight Amendment is without merit.

## **Argument**

A. **JOHNSON HAS MADE NO SHOWING THAT HE IS ENTITLED TO RELIEF UNDER A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR VIOLATIONS OF HIS FIRST, FOURTH AND FIFTH AMENDMENT RIGHTS.**

Johnson alleges several instances of ineffective assistance of counsel. These include: (1) failure to move to suppress evidence of journal entries on First, Fourth, and Fifth Amendment grounds; (2) failure to challenge the indictment on the theory that it was based on inadmissible journal entries; and (3) failure to move to suppress evidence of other private papers on First, Fourth, and Fifth Amendment grounds.

A finding of ineffective assistance of counsel requires a two prong showing, and a petitioner bears the burden of persuasion for both prongs. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a petitioner must show that counsel's performance was deficient. *Id*. "Deficient performance" is not merely below-average performance; rather, counsel's actions must fall below objective standards of reasonableness. *Id*. at 687, 688. *Strickland* suggests that courts, in assessing counsel's performance, should defer to counsel's tactical decisions and filter from its analysis the distorting effects of hindsight. *Id*. at 689. The first prong of *Strickland* necessitates a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.

Under the second prong of *Strickland*, a petitioner must show that prejudice resulted from the deficient performance. *Id*. at 692. If, however, counsel's actions do not fall below an objective standard of reasonableness, then the court need not consider the second prong. *Bell v. Evatt*, 72 F.3d 421 (4th Cir. 1995). To establish prejudice, a

petitioner must show that there is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. at 694.  "Reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  If a defendant fails to meet the burden of proving prejudice, the reviewing court need not consider the performance prong.  *Fields v. Attorney Gen. Of Md.*, 956 F.2 1290, 1297 (4th Cir. 1992).

### 1. The Seizure Of Johnson's Journals and Personal Papers Did Not Violate The First Or Fourth Amendments.

Johnson claims that his counsel was ineffective for failing to seek the suppression of the journals seized from his home office.  Johnson argues that the seizure of the journals, if challenged by counsel, would have been subjected to a higher level of scrutiny because of the religious impetus for their creation.  Johnson is mistaken in his legal analysis on these issues.

The journals were seized pursuant to search warrant executed on Johnson's home, which included a home office.  Johnson's claim, that the seizure of the journals as evidence of his Ponzi scheme should have been subjected to heightened scrutiny, is without merit.  In support of his claim, Johnson cites to the Supreme Court opinion in *Stanford v. State of Tex.*, 379 U.S. 476, 485 (1965).  "The Constitutional requirement that search warrants must particularly describe the 'things seized' is to be afforded the most scrupulous exactitude when the 'things' are books *and the basis for their seizure is the ideas which they contain.*"  *Id.* at 485 (emphasis added).  However, Johnson's journals were seized for their evidentiary value, not for any religious or expressive ideas they may

7

contain. *See United States v. Truglio* 731 F.2d 1123 (4th Cir. 1973) (overruled on other grounds). Therefore Johnson's case differs markedly from *Stanford* and is distinguishable on the grounds that "[a] book which is no more than a ledger of an unlawful enterprise thus might stand on a quite different constitutional footing from the books involved in the present case." *Stanford v. State of Tex.*, 379 U.S. 476 (1965) (internal quotations omitted).

Johnson is also mistaken in his belief that items may not be seized if they constitute "mere evidence." Johnson invokes the mere evidence rule as stated in *Gould v. United* States, 225 U.S. 298 (1921) to assert that the journals were not seizable even if an officer discovered them while acting in good faith reliance of the search warrant. This claim is without merit because the "mere evidence" rule has been abandoned. "Nothing in the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband. . . Moreover, nothing in the nature of property seized as evidence renders it more private than property seized, for example, as an instrumentality; quite the opposite may be true." *Warden Md. Penitentiary v. Hayden*, 387 U.S. 294, 302-03 (1967). The Court went on to explicitly state that "[t]he premise in *Gould* that government may not seize evidence simply for the purpose of proving crime has likewise been discredited." *Id.* at 306. As there is no merit to Johnson's claim that the journal was impermissibly seized, counsel was therefore not ineffective for failing to raise this meritless argument at trial.

## 2. The Introduction Of Johnson's Journals And Private Papers At Trial Did Not Violate The Fifth Amendment.

Johnson makes numerous claims that the use of the journals constituted a violation of his Fifth Amendment right against self-incrimination. Allegations of compelled self-incrimination are interspersed with the other arguments throughout Johnson's motion. Johnson's motion is ambiguous concerning the point at which he asserts that he was compelled to incriminate himself. To support this claim, Johnson cites heavily to *Boyd v. United States*, 116 U.S. 616 (1886) (holding that the seizure or compulsory production of a man's private papers to be used in evidence against him is equivalent to compelling him to be a witness against himself). The reasoning in *Boyd* was later rejected by the Court in *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 302-03 (1967). Courts have since shifted the focus from a content based analysis to an act of production analysis. In *United States v. Wujkowski*, 929 F.2d 981, 983 (4th Cir. 1991), the Fourth Circuit clarified the Fifth Amendment analysis related to private documents:

> The case law now makes plain that appellants' claim of a privilege broadly based on the contents of appointment books and on beach house records must be rejected. *See United States v. Mason,* 869 F.2d 414, 416 (8th Cir.1989); *In re Steinberg,* 837 F.2d 527, 530 (1st Cir.1988). [A] person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded. *Baltimore City Dep't of Social Serv. v. Bouknight,* 493 U.S. 549, 110 S.Ct. 900, 905, 107 L.Ed.2d 992 (1990). This is so because when the government demands that an item be produced, 'the only thing compelled is the act of producing the [item]. *Id.* (citing *Fisher,* 425 U.S. at 410 n. 11, 96 S.Ct. at 1581 n. 11). (Internal quotations omitted).

In applying the act of production analysis to Johnson's case, there is no merit to his Fifth Amendment claim because the documents were seized pursuant to a search warrant. At no point was there an act of production as would have been the case had Johnson been issued a subpoena to produce the documents to a Grand Jury. It follows then that, under *Wujkowski*, Johnson was never compelled by the government to incriminate himself. As such, Johnson's claims relating to the Fifth Amendment are without merit as a matter of law. It then follows that his counsel was not ineffective for failing to raise a meritless claim alleging a Fifth Amendment violation.

### B. THE INDICTMENT WAS NOT IN ERROR.

Based on his belief that the journals were not subject to seizure, Johnson alleges that their potential presentation to the grand jury would have rendered the indictment invalid. He goes on to allege that his counsel was ineffective for failing to file a motion to dismiss the indictment on these grounds. This claim is also without merit.

This claim fails for the same reasons that the other claims related to Johnson's journals are without merit: the journals were legally subject to seizure and introduction at trial. As such, this claim should be dismissed as a matter of law as Johnson's counsel could not have been ineffective for failing to make a meritless argument.

Clearly, such evidence would be admissible before the grand jury. "[T]he public . . . has a right to every man's evidence." *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972). The grand jury has authority to compel production of evidence and testimony "unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *United States v. Calandra*, 414 U.S. 338, 343 (1948). Johnson's claim

of error in the grand jury proceedings is without merit and his counsel is therefore not ineffective for failing to make this meritless argument.

### C. THE ATTORNEYS FOR THE GOVERNMENT DID NOT COMMIT PROSECUTORIAL MISCONDUCT.

Flowing from Johnson's allegation that the journals were not legally subject to seizure, he alleges that the prosecutors' introduction of them at trial constituted prosecutorial misconduct. Johnson has not made any allegations of prosecutorial misconduct outside of those related to the introduction of the journal evidence.

"[R]eversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910 F.2d 102, 103 (4th Cir. 1990) (internal quotations omitted).

As there is no merit to Johnson's allegations that the journals were not subject to seizure and use at trial, it then follows that the prosecution could not have engaged in misconduct by introducing them. As such, the claim of prosecutorial misconduct must be dismissed.

### D. THE TRIAL AND APPELLATE COURTS DID NOT COMMIT ERROR IN RELYING ON JOHNSON'S JOURNALS TO ESTABLISH THAT JOHNSON ACTED AS A COMMODITY POOL OPERATOR WITHIN THE STATUTE OF LIMITATIONS.

Based on his assertion that the journals were not admissible against him at trial, Johnson claims that the District Court and Court of Appeals erred in determining that there was sufficient evidence to prove that Johnson acted as a commodity pool operator

within the statute of limitations. This claim is without merit for the same reason that Johnson's other claims related to the journals are without merit: the journals were lawfully seized and lawfully introduced at trial.

This claim is also not cognizable on collateral review because the sufficiency of the evidence to convict Johnson of acting as a commodity pool operator within the statute of limitations was heard and ruled upon by the Fourth Circuit Court of Appeals. Issues fully considered on direct appeal may not be reconsidered under the guise of a collateral attack by way of a motion to vacate or correct sentence. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (citing *Herman v. United States*, 227 F.2d 332 (4th Cir. 1955)). *See also, United States v. Roane*, 378 F.3d 382, 397 (4th Cir. 2004) ("[b]ecause we addressed this issue on direct appeal, defendants cannot raise their claim again in these 2255 proceedings.); *United States v. Rush*, 99 Fed.Appx. 489, 490 (4th Cir. 2004) (unpublished opinion) ("an issue previously decided on direct appeal may not be raised on collateral review") (citing *Boeckenhaupt*, 537 F.2d at 1183). As such, Johnson's claim on this matter must be dismissed.

### E. THE SENTENCE IMPOSED BY THE DISTRICT COURT WAS NOT UNREASONABLE.

While acknowledging that the imposed sentence of 200 months was within the guidelines range, Johnson argues that his sentence is in violation of the Eight Amendment because the Court failed to consider his lifetime of contribution, his lack of criminal record, his spiritual dedication, his family ties, and his community support. He further

argues that the sentence imposed is in violation of the Eight Amendment because his co-defendant received a shorter sentence after entering into a plea agreement.

Once again, Johnson's claims were properly the subject of his direct appeal. Regardless, his claims are without merit.

Johnson's claims are based on impermissible grounds for downward departure and are therefore without merit as a matter of law. Evidence of a defendant's prior good citizenship, including significant charitable contributions, is ordinarily not a basis for downward departure. *See* U.S.S.G. § 5H1.11, p.s.; and *United States v. McHan,* 920 F.2d 244, 247 (4th Cir. 1990). "Because the Commission discouraged departure on the basis of family ties and responsibilities, departure pursuant to § 5H1.6, p.s. is permitted only upon a finding that the defendant's family ties or responsibilities are extraordinary." *United States v. Wilson*, 114 F.3d 429m 433-34 (4th Cir. 1997).

The sentence of Johnson's co-defendant, Farrier, reflected the fact that Farrier had entered into a plea agreement and had provided substantial assistance to the government. In addition, sentencing disparity between similarly situated co-defendants is not a proper basis for a downward departure. *United States v. Perkins*, 108 F.3d 512, 515 (4th Cir. 1997).

As such Johnson has not alleged a failure on the part of the District Court to consider any sentencing factors that should have been taken into consideration. His claim for relief is therefore without merit and must be dismissed.

## **CONCLUSION**

Based on the forgoing and the record before this Court, the United States of America respectfully requests that this Court deny Johnson's Motion for Relief under 28 U.S.C. § 2255, dismiss Johnson's claims with prejudice, and strike this matter from the Court's docket.

                                          Respectfully submitted,

                                          TIMOTHY J. HEAPHY
                                          United States Attorney

Date: August 6, 2012                       s/Jennie L. M. Waering
                                          Assistant United States Attorney
                                          Virginia State Bar No. 20570
                                          United States Attorney's Office
                                          P.O. Box 1709
                                          Roanoke, VA 24008
                                          Phone: (540) 857-2250
                                          E-mail: Jennie.Waering@usdoj.gov

                                          s/Jonathan S. Ferro
                                          Jonathan S. Ferro
                                          Third Year Practice Intern

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 6th day of August, 2012, electronically filed the foregoing United States' Motion to Dismiss Petitioner's Motion for Relief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel. A hard copy of the motion has also been provided to Peitioner Ted James Johnson, Jr., via United States mail.

s/Jennie L. M. Waering
Assistant United States Attorney


s/Jonathan S. Ferro
Jonathan S. Ferro
Third Year Practice Intern
